**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ISABEL PEREZ,<br><br>               Plaintiff,<br><br>    v.<br><br>FACTORY DIRECT OF SECAUCUS, LLC d/b/a ASHLEY FURNITURE HOMESTORE, EUGENE CHRINIAN, in his official and individual capacities and KATHY MARTIN, in her official and individual capacities,<br><br>               Defendants. | **COMPLAINT**<br><br><br><br>**JURY TRIAL DEMAND** |

Plaintiff Isabel Perez ("Plaintiff" or "Ms. Perez"), by and through her undersigned counsel, as and for her Complaint in this action against Defendants Factory Direct of Secaucus, LLC d/b/a Ashley Furniture HomeStore, Eugene Chrinian and Kathy Martin (collectively, "Defendants"), hereby alleges as follows:

**NATURE OF THE CLAIMS**

1.      This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices against Plaintiff, including its discriminatory treatment and harassment of Plaintiff due to her sexual orientation and its unlawful retaliation against her after she complained about unlawful discrimination in the workplace in violation of the Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("NJLAD").

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Section 1981.  The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PROCEDURES

4.      Prior to the filing of this Complaint, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII").  Plaintiff's EEOC charge arises out of many of the same facts alleged herein that pertain to her Section 1981 retaliation claim.

5.      When the EEOC completes its investigation of the charge and issues Plaintiff notice of right to sue, Plaintiff will seek leave to amend this Complaint to add claims that Defendants violated Title VII as well.

6.      Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

7.      Plaintiff Isabel Perez is a resident of Bergen County, New Jersey.  At all relevant times, Plaintiff is and has been a resident of the State of New Jersey and met the definition of an "employee" under all applicable statutes.

8. Upon information and belief, Defendant Factory Direct of Secaucus, LLC d/b/a as Ashley Furniture HomeStore ("Ashley" or the "Company") is engaged in the sale of home furniture in the metropolitan New York and New Jersey area. At all relevant times, Ashley has met the definition of an "employer" under all applicable statutes.

9. Defendant Eugene Chrinian is the Chief Executive Officer of Ashley and resides in the State of New Jersey. At all relevant times, Defendant Chrinian directly participated in the discriminatory and otherwise unlawful employment decisions and actions taken against Plaintiff, and was a "covered employer" and/or an "aider" or "abettor" under all relevant statutes. Defendant Chrinian, through a number of different legal entities, owns and operates 7 Ashley Furniture HomeStore locations in the metropolitan New York and New Jersey area.

10. Defendant Kathy Martin is Ashley's Director of People Services and Development and resides in the State of New Jersey. At all relevant times, Defendant Martin directly participated in the discriminatory and otherwise unlawful employment decisions and actions taken against Plaintiff, and was a "covered employer" and/or an "aider" or "abettor" under all relevant statutes.

## FACTUAL ALLEGATIONS

11. Plaintiff is a homosexual female and former employee of Ashley.

12. Plaintiff was employed by Ashley from September 25, 2012 to October 8, 2012 as a Human Resources Director.

13. As Human Resources Director, Plaintiff reported to Defendant Martin and Defendant Chrinian.

14.     During the course of her employment with the Company, Plaintiff's position had responsibility for providing human resources support and services to each of the Ashley Furniture HomeStore locations owned and operated by Defendant Chrinian.

15.     From the outset of Plaintiff's employment with the Company, Plaintiff was subjected to a pattern of inappropriate questions concerning her religion and her sexual orientation as well as derogatory comments regarding the race and ethnicity of other Company employees.

**Plaintiff's Employment Interviews With Chrinian and Martin**

16.     Prior to accepting employment with Ashley, Plaintiff interviewed with both Martin and Chrinian.  During these interviews, both Martin and Chrinian questioned Plaintiff about her religious views and marital status.

17.     During Plaintiff's interview with Martin, Martin made a number of derogatory racial comments.  For example, Martin referred to African-Americans as "Brownies" and Caucasians as "Creamies."  Martin explained that she could make these comments because she was of mixed descent.

18.     During her interview with Martin, Martin also advised Plaintiff that Chrinian was a Christian and asked Plaintiff whether she was.  Plaintiff responded that she was and Martin then asked Plaintiff a number of questions about being a minister because Plaintiff had listed on her resume that she was a member of the National Association of Christian Ministers.

19.     During the interview, Martin also advised Plaintiff that Chrinian adhered to the teachings of the C12 Group – a group of Christian business owners that advocates the application of biblical principals to business management.

20.     During Plaintiff's interview with Chrinian, Chrinian questioned Plaintiff about her marital status – which Plaintiff attempted to deflect because she did not believe it was an appropriate question for an employment interview and because she did not want to disclose her sexual orientation at this point.

21.     Chrinian also question Plaintiff about being a minister and asked if Plaintiff was a Christian.  When she responded that she was, Chrinian asked if she was a "real Christian," to which Plaintiff responded that she was.

22.     After her interviews with both Martin and Chrinian, Plaintiff was offered the position with Ashley and she accepted the following day.  Plaintiff and Defendants then agreed that Plaintiff's official start date would be Tuesday, September 25, 2012.

23.     After accepting the job offer, Plaintiff began to take steps to wind down the private consulting business that she had been operating prior to her employment with Ashley so that she could focus her efforts on her employment with Ashley.

**Plaintiff's Pre-Employment Work and Martin's Continued Derogatory Comments**

24.     On September 19, 2012, at Martin's request, Plaintiff attended a training session at ADP with two other Ashley Human Resources employees.

25.     On September 21, 2012, at Martin's request, Plaintiff met with Martin at the Company's offices.  At the start of this meeting, Martin took hold of Plaintiff's hands and began to pray to God to ask for guidance in addressing the particular work situation that they were set to discuss.

26.     During this same meeting, Martin disclosed the fact that she was frequently possessed by Jesus and would sometimes speak in tongues without warning.  At this meeting, Martin said that she "spoke to God" and that she was "sure [they] would make a balanced team."

27.     During this meeting, Martin made a number of derogatory remarks about homosexuals, stating that "lesbos and gays would be judged" and that she follows the "word of Leviticus" – which purportedly condemns homosexuality – and that "there are many who call themselves true Christians, but they don't know what that means."

**Plaintiff Officially Begins Her Employment With Ashley**

28.     On September 25, 2012, Plaintiff's "official" start date, Plaintiff witnessed Martin make a number of derogatory and discriminatory comments about Company employees.

29.     For example, Plaintiff witnessed Martin refer to a Company employee as a "nigga" – which she tried to explain was different from the n-word.  When Plaintiff expressed concern and asked Martin to stop using these derogatory comments in the workplace, Martin responded, "Girl, please.  They're different.  It was nigga, not [the n-word]."  Martin then advised Plaintiff that she needed to be more understanding of the Company's "culture."

30.     Similarly, two other Human Resources employees recounted to Plaintiff that Martin often directed derogatory and discriminatory comments to them, including referring to them as "nigga" (as well as the n-word), "bitch," "heifer," "ghetto," "lesbo" and "fag," among others.

31.     Over the course of the following two weeks, Plaintiff continued to raise concerns with Martin regarding Martin's and other co-workers' discriminatory comments and conduct including, but not limited to, the use of various racial and ethnic slurs in the workplace as well as Martin's constant application of her religious beliefs to relatively trivial workplace matters that far exceeded what would be reasonable under similar circumstances.

32.     During this same time period, Martin continued her practice of praying before most of her work meetings with Plaintiff and her unsolicited "laying of the hands" on Plaintiff which she explained was so that God could speak to Plaintiff through Martin.

33.     While Plaintiff attempted to keep her sexual orientation private, it was well known among Plaintiff's co-workers that she was a lesbian and was married to a woman.  In fact, Plaintiff disclosed her sexual orientation to two of her co-workers when they questioned her about her marital status.  Upon information and belief, both Chrinian and Martin were aware of Plaintiff's sexual orientation.

**Defendants' Termination of Plaintiff's Employment**

34.     On October 5, 2012, Martin and Plaintiff were walking in the parking lot and approached Plaintiff's car.  Martin then questioned Plaintiff about a decal that she had on her car.  The decal was for the Human Rights Campaign – the nation's largest civil rights organization dedicated to achieving equality for lesbian, gay, bisexual and transgender Americans.

35.     Plaintiff explained to Martin that the decal on her car was the "equality symbol." Martin then asked Plaintiff whether it was for "the gays" and then proceeded to tell Plaintiff that she was not sure that she made the right decision about hiring Plaintiff because she did not fit the "culture" at the Company.  She then explained that she was going to "speak to God" about Plaintiff's continued employment with Ashley.

36.     The next business day, Monday, October 8, 2012, Plaintiff was called into a meeting with Martin and Alfred Nunez (Sales Manager) where Martin told Plaintiff that she had prayed about it and that God had spoken to her and told her that she needed to let Plaintiff go. Martin continued: "You just don't fit our culture. . . .  I need someone in your position that can embody our mission statement.  Your beliefs just don't fit."  Martin stressed to Plaintiff that the decision was not related to her work performance, telling Plaintiff: "We all know you are very capable and can easily manage the entire department."

37.     In light of the foregoing, it is clear that Plaintiff was terminated because of her sexual orientation and/or objection to Martin's discriminatory comments.

38.     While Martin did not explain what she meant when she said that Plaintiff did not fit the Company's "culture" or "embody [the Company's] mission statement," Martin's comments were a clear reference to the Company's efforts to incorporate management's view of Christian teachings into the workplace.

39.     Indeed, the Company's website indicates that it proudly supports FamilyLife, an organization whose mission is to "effectively develop godly marriages and families who change the world one home at a time."  While this mission is laudable on its face, in practice it promotes discrimination against homosexuals as the founder of FamilyLife has warned against the "radical homosexual element in our culture."

## FIRST CAUSE OF ACTION

### (Retaliation in Violation of Section 1981)

40.     Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

41.     Defendants have violated Section 1981 by subjecting Plaintiff to retaliation for her protected complaints and opposition to Martin's discriminatory comments on the basis of race and ethnicity, by, *inter alia,* terminating Plaintiff's employment with the Company.

42.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

43.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

44.     Defendants' unlawful retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

### SECOND CAUSE OF ACTION

### (Violation of the New Jersey Law Against Discrimination)

45.     Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

46.     Defendants have discriminated against Plaintiff in violation of the New Jersey Law Against Discrimination by subjecting her to disparate treatment because of her sexual orientation, by, *inter alia,* terminating Plaintiff's employment with the Company.

47.     As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of the New Jersey Law Against Discrimination, Plaintiff has suffered and continues to suffer financial and economic damages as well as severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

48.     Defendants' unlawful discriminatory conduct constitutes a willful and wanton violation of the New Jersey Law Against Discrimination, was outrageous and malicious, was

intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## THIRD CAUSE OF ACTION

### (Retaliation in Violation of the New Jersey Law Against Discrimination)

49.     Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

50.     Defendants have violated the New Jersey Law Against Discrimination by subjecting Plaintiff to retaliation for her protected complaints and opposition to Martin's discriminatory comments on the basis of race and ethnicity by, *inter alia*, terminating Plaintiff's employment with the Company.

51.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New Jersey Law Against Discrimination, Plaintiff has suffered and continues to suffer monetary and/or economic damages as well as suffer severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

52.     Defendant's unlawful retaliatory conduct constitutes a willful and wanton violation of the New Jersey Law Against Discrimination, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against

Defendant, containing the following relief:

A.      A declaratory judgment that the actions, conduct and practices of Defendants

complained of herein violate the laws of the United States and the State of New Jersey;

B.      An injunction and order permanently restraining Defendants from engaging in

such unlawful conduct;

C.      An order directing Defendants to place Plaintiff in the position she would have

occupied but for Defendants' discriminatory, retaliatory and/or otherwise unlawful treatment of

her, as well as to take such affirmative action as is necessary to ensure that the effects of these

unlawful employment practices and other unlawful conduct are eliminated and do not continue to

affect Plaintiff;

D.      An award of damages in an amount to be determined at trial, plus prejudgment

interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not

limited to, the loss of past and future income, wages, compensation, job security and other

benefits of employment;

E.      An award of damages in an amount to be determined at trial, plus prejudgment

interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including,

but not limited to, compensation for her severe mental anguish and emotional distress,

humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence

and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

F.      An award of damages in an amount to be determined at trial, plus prejudgment

interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of

career fulfillment;

      G.      An award of damages for any and all other monetary and/or non-monetary losses

suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

      H.      An award of punitive damages;

      I.      An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's

reasonable attorneys' fees to the fullest extent permitted by law; and

      J.      Such other and further relief as the Court may deem just and proper.


## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: January 16, 2013

THE OTTINGER FIRM, P.C.


By:         s/ Gregory N. Filosa
          Gregory N. Filosa (GF-3862)

20 West 55th Street, 6th Floor
New York, NY 10019
Telephone: (212) 571-2000
Facsimile: (212) 571-0505

COUNSEL FOR PLAINTIFF
