**ARCHER & GREINER**
A Professional Corporation
Court Plaza South, West Wing
21 Main Street, Suite 353
Hackensack, New Jersey 07601-7095
(201) 342-6000
Attorneys for Defendants Factory Direct of Secaucus, LLC
d/b/a Ashley Furniture HomeStore, Eugene Chrinian and Kathy Martin

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ISABEL PEREZ,<br><br>     Plaintiff,<br>v.<br><br>FACTORY DIRECT OF SECAUCUS, LLC d/b/a ASHLEY FURNITURE HOMESTORE, EUGENE CHRINIAN, in his official and individual capacities, and KATHY MARTIN, in her official and individual capacities,<br><br>     Defendants. | CIVIL ACTION<br><br>NO.: 2:13-cv-00327 (SDW-MCA)<br><br><br><br><br>**AFFIDAVIT OF**<br>**NEEL JHAVERI** |

STATE OF NEW JERSEY  )
                              :ss.
COUNTY OF BERGEN    )

      Neel Jhaveri, of full age, being duly sworn according to law, deposes and says:

      1.    I, Neel Jhaveri, am the Sales Manager in the Paramus, New Jersey store of Defendant Factory Direct of Secaucus, LLC d/b/a Ashley Furniture HomeStore ("Ashley"), served in that position at all times referenced below, and have full knowledge of the facts set forth in this affidavit.

      2.    On October 4, 2012, Isabel Perez, who at the time was the Ashley Human Resources Director, and Theresa Ricciardi, who at the time was an Ashley Recruiter, visited our

Paramus store. I had never met either of them before. At the time, I was unaware of Ms. Perez' particular title. I knew only that she was new to the Ashley Human Resources Department.

3. Ms. Perez and Ms. Ricciardi participated in the morning "huddle" that took place among the store employees. The huddle is a meeting at which the store's managers and product specialists (salespersons) discuss issues that will or may arise throughout the work day, or to resolve prior issues that may have arisen.

4. Ms. Perez displayed an attitude during the morning huddle that was both crude and unproductive. In front of the other employees, Ms. Perez repeatedly interrupted me while I was speaking and questioned my ability to manage the store.

5. Ms. Perez told the store employees that the Paramus store employees "have done a lot of things wrong for a number of years" and that she was "going to have to fix it." Because Ms. Perez had never been to the Paramus store before, and only had been employed by Ashley for a few days, I was shocked by her statements and demeanor. I do not know what her comments referred to.

6. Ms. Perez told the store employees, in a curt and threatening manner, that, "If you're late one time, you'll have a verbal warning; second time a write up; and third time you won't work here." Ms. Perez also addressed employee absenteeism in a similarly threatening manner. Again, I was shocked by Ms. Perez' statements and demeanor, as the Paramus store did not have any problem regarding employee tardiness or absenteeism. It was clear to me that Ms. Perez did not have any specific knowledge regarding the Paramus store.

7. After the morning huddle, I said to Ms. Perez, "I need to talk to you. You're a new HR person. What gives you the right to come into the store and criticize me before the

employees?" Ms. Perez responded that I was right, that she only was generalizing, and that she would not do so anymore.

8. Despite Ms. Perez' statement that she would not make further criticism, her behavior continued during the store's afternoon huddle. During the huddle, Ms. Perez and Ms. Ricciardi were extremely rude, as they repeatedly engaged in their own conversations while I was attempting to address the employees. Ms. Perez also said to the employees, in an intimidating manner, that she was going to "clean up the mess" at the store. To this day I do not know what she was talking about.

9. Because no member of Ashley's management ever had come into the Paramus store and behaved in the way Ms. Perez had, I asked her what specifically was her function in the Human Resources Department. In response, Ms. Perez referenced Kathy Martin, who at the time was Ashley's Director of People Services and Development. Ms. Perez stated that, "Kathy Martin doesn't know what she's doing," and that she (Ms. Perez) would have to "coach" Ms. Martin.

10. It was clear to me that Ms. Perez' conduct in the Paramus store had intimidated and insulted our store's employees. As such, I advised Jay Travaglini, my District Manager, and Mark Scott, Ashley's Chief Operating Officer, of Ms. Perez' conduct.

11. I hereby declare that the foregoing statements made by me are true to the best of my knowledge.

_____
Neel Jhaveri

Sworn & Subscribed to
before me this 31 day
of July, 2014.

_____
Notary Public

11360626v1
**SUSAN CARRINO**
Notary Public of New Jersey
I.D. # 2335305
Commission Expires 10/3/2015