ARCHER & GREINER
A Professional Corporation
Court Plaza South, West Wing
21 Main Street, Suite 353
Hackensack, New Jersey 07601-7095
(201) 342-6000
Attorneys for Defendants Factory Direct of Secaucus, LLC
d/b/a Ashley Furniture HomeStore, Eugene Chrinian and Kathy Martin

BY:  STEVEN B. HARZ, ESQUIRE (006921977)
     DANIEL C. RITSON, ESQUIRE (027802004)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ISABEL PEREZ,<br><br>      Plaintiff,<br><br>v.<br><br>FACTORY DIRECT OF SECAUCUS, LLC<br>d/b/a ASHLEY FURNITURE HOMESTORE,<br>EUGENE CHRINIAN, in his official and<br>individual capacities, and KATHY MARTIN,<br>in her official and individual capacities,<br><br>      Defendants. | CIVIL ACTION<br><br>NO.:  2:13-cv-00327 (SDW-MCA)<br><br><br><br>**STATEMENT OF MATERIAL FACTS<br>NOT IN DISPUTE PURSUANT TO<br>LOCAL CIV. RULE 56.1(a)** |

Defendants Factory Direct of Secaucus, LLC d/b/a Ashley Furniture HomeStore ("Ashley"), Eugene Chrinian, and Kathy Martin (collectively with Ashley and Mr. Chrinian, "Defendants") submit this Statement of Material Facts Not in Dispute Pursuant to Local Civ. Rule 56.1(a), in support of Defendants' Motion for Summary Judgment.

1.  Plaintiff Isabel Perez ("Plaintiff") was employed by Ashley from September 25, 2012 through October 8, 2012.  Certification of Counsel in Support of Defendants' Motion for Summary Judgment ("Counsel Cert.") at ¶10, Exhibit "H", transcript of the deposition of Isabel Perez ("Plaintiff Dep.") at 37:15-17.  During Plaintiff's mere fourteen (14) days of employment

1

with Ashley, she offended and insulted nearly every colleague with whom she came into contact (citations follow throughout).

2.      Plaintiff was hired by Ashley as the Human Resources Director, to add additional support to Ashley's Human Resources Department. Counsel Cert. at ¶9, Exhibit "G", transcript of the deposition of Mark Scott ("Scott Dep.") at 21:5-16.

3.      When Ashley hired Plaintiff, the Human Resources Department was overseen by Defendant Kathy Martin, who at the time was Ashley's Director of People Services and Development. Id.; Counsel Cert at ¶4, Exhibit "B", transcript of the deposition of Kathy Martin ("Martin Dep.") at 21:19-25.

4.      Ashley's intention was that Plaintiff would handle day-to-day human resources issues, while Ms. Martin would continue to be responsible for the entire Human Resources Department including, but not limited to, recruiting. Scott Dep. 29:18-30-13.

5.      In Plaintiff Perez' pre-offer interview with Defendant Eugene Chrinian, Ashley's Chief Executive Officer, Plaintiff took note of a Bible verse on a plaque in Mr. Chrinian's office, and asked whether Mr. Chrinian was a Christian. Counsel Cert. at ¶5, Exhibit "C", transcript of the deposition of Eugene Chrinian ("Chrinian Dep.") at 36:11-37:12.

6.      When Mr. Chrinian confirmed that he was a Christian, Plaintiff volunteered to him that she was an Episcopal minister. Id.

7.      In Plaintiff's pre-offer interview with Ms. Martin, Plaintiff also volunteered to Ms. Martin that Plaintiff was an Episcopal minister. Martin Dep. at 162:17-25.

8.      Following Plaintiff Perez' interviews with Mr. Chrinian and Mr. Martin, Mr. Chrinian expressed to Ms. Martin a concern with respect to Plaintiff's approach to employee

relations issues, and asked Ms. Martin to speak with Plaintiff about softening her (Plaintiff's) assertive approach. Id. at 171:18-172:3.

9. Following Ashley's offer of employment to Plaintiff, Mr. Chrinian also was disturbed by the fact that Plaintiff insisted on the title of Director of Human Resources, as opposed to Human Resources Manager. Chrinian Dep. at 31:4-15.

10. Plaintiff seemed to be more concerned with her title than with her job responsibilities, causing Mr. Chrinian to be concerned that Plaintiff may not have been a good fit with the company. Id. at 42:19-44:3.

11. On September 19, 2012, prior to beginning employment with Ashley, Plaintiff voluntarily attended an educational session at Automatic Data Processing, Inc. (ADP) for a small group of Ashley employees. ADP is Ashley's payroll services provider. Counsel Cert. at ¶10, Exhibit "H", transcript of the deposition of Isabel Perez ("Plaintiff Dep.") at 70:20-71:1.

12. In addition to Plaintiff, the ADP session was attended by Amber Dominguez, a now former Human Resources Assistant/Coordinator at Ashley, Lisa Thorpe, a now former Recruiter at Ashley, and Ms. Martin. Id.; Martin Dep. at 178:18-22.

13. Ms. Martin arrived at the ADP session after Plaintiff Perez, Ms. Dominguez, and Ms. Thorpe. Id. at 180:7-9.

14. Prior to Ms. Martin's arrival at the ADP session, Plaintiff behaved in an argumentative and disruptive fashion, repeatedly dismissing the questions that Ms. Dominguez and Ms. Thorpe asked the ADP instructor. Counsel Cert. at ¶7, Exhibit "E", transcript of the deposition of Lisa Thorpe ("Thorpe Dep.") at 30:24-31:13; 32:20-22; Counsel Cert. at ¶8, Exhibit "F", transcript of the deposition of Amber Dominguez ("Dominguez Dep.") at 39:23-40:7; Exhibit 1.

3

15.     Ms. Dominguez and Ms. Thorpe advised Plaintiff that they previously had discussed with Ms. Martin the information that they hoped to gain from the ADP session. Thorpe Dep. at 31:23-32:1; Dominguez Dep. at 40:8-15.

16.     Plaintiff responded that, "[Ms. Martin] is not overseeing ADP; I am."  Thorpe Dep. at 32:2-5; Exhibit 1.  Dominguez Dep. at 40:17-25; Exhibit 1.

17.     Without the knowledge or consent of Ms. Dominguez or Ms. Thorpe, Plaintiff surreptitiously recorded the ADP session, greatly upsetting both women.  Thorpe Dep. at 32:6-18; Dominguez Dep. at 41:8-21.

18.     After Ms. Martin arrived at the ADP session, Ms. Dominguez and Ms. Thorpe informed Ms. Martin of Plaintiff's conduct described above.  Martin Dep. at 179:24-182:1.

19.     Even after Ms. Martin arrived at the meeting, Plaintiff inappropriately continued to express exasperation with Ms. Thorpe's questions, by making a "huffing" sound each time that Ms. Thorpe asked a question.  Id. at 180:7-181:1.

20.     As a result, Ms. Martin met with Plaintiff Perez prior to Plaintiff formally beginning her (Plaintiff's) employment at Ashley.  Id. at 186:24-187:21.

21.     As a result of Plaintiff's unprofessional behavior at the ADP session, Ms. Martin expressed concern about Plaintiff fitting in at Ashley.  Id. at 187:12-21.

22.     Also, due to the uncertain duration of Plaintiff's employment at Ashley, Ms. Martin told Plaintiff not to dissolve Plaintiff's consulting firm.  (Plaintiff was self-employed at the time.)  Id. at 77:13-21; Plaintiff Dep. at 75:11-15.

23.     Plaintiff's employment at Ashley formally began on September 25, 2012.  Id. at 37:8-9.

24.     Shortly after, Plaintiff held closed door meetings with Ms. Dominguez and Ms. Thorpe, in which Plaintiff outlandishly stated, among other things, that

-     Ms. Martin was no longer in charge of Ashley's Human Resources Department;

-     Eugene Chrinian, Ashley's Chief Executive Officer, was seeking to discharge Ms. Dominguez and Ms. Thorpe and kept a file on them;

-     Ms. Martin also wanted to discharge Ms. Dominguez and Ms. Thorpe;

-     Mr. Chrinian did not trust Ms. Martin; and

-     Plaintiff was going to replace Ms. Martin.

Thorpe Dep. at 33:12-25; 35:13-25; Exhibit 1; Dominguez Dep. at 25:2-5; 26:4-19; 32:17-33:4; 43:22-44:13; 44:23-45:9; 45:18-20; Exhibit 1; Plaintiff Dep. at 77:3-19.

25.     Plaintiff's statements were patently false.  In fact, neither Ms. Dominguez nor Ms. Thorpe ever was discharged by Ashley but, rather, resigned.  Dominguez Dep. 75:8-12; Thorpe Dep. at 47:24-48:2.

26.     In fact, it was *Plaintiff* who wanted to discharge Ms. Dominguez and Ms. Thorpe. Counsel Cert. at ¶6, Exhibit "D", transcript of the deposition of Theresa Ricciardi ("Ricciardi Dep.") at 44:9-13.

27.     Plaintiff continued her inappropriate comments to Ms. Dominguez and Ms. Thorpe, telling them that, "[Ms. Martin] and I are running side by side, but I never lose." Dominguez Dep. at 43:18-21; Thorpe Dep. at Exhibit 1.

28.     Further, Plaintiff reprehensibly told Ms. Dominguez that Plaintiff had "investigated" Ms. Martin and determined that

-     Ms. Martin's ex-husband was a drug addict, as was Ms. Martin;

-     Ms. Martin once had been homeless;

5

-      Ms. Martin's children were fathered by different men; and

-      Ms. Martin was covering up other negative past history.

Dominguez Dep. at 33:15-25; 51:1-52:5; Exhibit 1.

29.     As a result of Plaintiff's vicious and inappropriate statements to Ms. Dominguez about Ms. Martin, Ms. Dominguez felt that Plaintiff, among other things, was "sneaky" and "untrustworthy." Dominguez Dep. at 53:3-12.

30.     On Thursday, October 4, 2012, Plaintiff and another new (at the time) Ashley hire and now former Recruiter, Theresa Ricciardi, visited Ashley's Paramus store. Affidavit of Neel Jhaveri ("Jhaveri Aff.") at ¶2.

31.     Plaintiff and Ms. Ricciardi participated in the morning "huddle" that took place among the store employees. The huddle is a daily meeting at which the store's managers and product specialists (salespersons) discuss issues that will or may arise throughout the workday, or to resolve prior issues that may have arisen. Id. at ¶3.

32.     During the morning huddle, Plaintiff repeatedly interrupted Neel Jhaveri, the Ashley Paramus store Sales Manager, while he was speaking. Id. at ¶4.

33.     Although Plaintiff and Mr. Jhaveri previously never had met, Plaintiff embarrassed Mr. Jhaveri in front of the other employees by questioning Mr. Jhaveri's ability to manage the Paramus store. Id. at ¶¶2, 4.

34.     Plaintiff Also told the Paramus store employees that Ashley "has done a lot of things wrong for a number of years" and that she was "going to have to fix it." Id. at ¶5.

35.     Because the Paramus store generally did not have employee issues, Mr. Jhaveri was bewildered by Plaintiff's statements. Id.

36.     In addition, despite the fact that the Paramus store did not have any problem regarding employee tardiness or absenteeism, Plaintiff threatened the store employees: "If you're late one time, you'll have a verbal conversation; second time a write up; and third time you won't work here." Id. at ¶6.

37.     Plaintiff also addressed employee absenteeism in a similarly threatening manner. Id.

38.     That afternoon (October 4, 2012), Plaintiff and Ms. Ricciardi participated in the afternoon huddle at the Paramus store. Id. at ¶8.

39.     During that huddle, Plaintiff repeatedly engaged in her own conversations with Ms. Ricciardi while Mr. Jhaveri was attempting to address the employees. Id.

40.     Plaintiff then said to those Paramus store employees that she was going to "clean up the mess" at the store. Id.; Plaintiff Dep. 85:10-11.

41.     Again because the Paramus store generally did not have employee issues, Mr. Jhaveri had no clue as to what Plaintiff's comments referred. Jhaveri Aff. at ¶8.

42.     Later, Plaintiff arrogantly said to Mr. Jhaveri that, "Kathy Martin doesn't know what she's doing," and that she (Plaintiff) would have to "coach" Ms. Martin. Id. at ¶9.

43.     On the following day, October 5, 2012, a meeting was held at Ashley's Secaucus store with respect to recruiting, at which Plaintiff Perez, Ms. Martin, Ms. Ricciardi, Ms. Dominguez, and Ms. Thorpe all were present. Dominguez Dep. at 46:20-24; Thorpe Dep. at 37:22-38:5; Ricciardi Dep. 34:9-14.

44.     During that meeting, Plaintiff and Ms. Ricciardi had a disagreement which led to Plaintiff screaming at Ms. Ricciardi. Thorpe Dep. 38:1-17; Ricciardi Dep. 37:13-21.

45.     In fact, at one point, Plaintiff screamed at Ms. Ricciardi, over and over, "You have to listen to me! I am the HR Director! I am the HR Director!" Dominguez Dep. at 49:10-13; Ricciardi Dep. 38:9-14; Thorpe Dep. at Exhibit 1.

46.     At another point in the meeting, Plaintiff left the room and told Ms. Martin that she (Plaintiff) wanted to resign from employment. Dominguez Dep. at 49:1-5; Thorpe Dep. at Exhibit 1.

47.     Ms. Martin convinced Plaintiff not to resign from employment. Dominguez Dep. at 41:6-9; Martin Dep. at 209:25-210:23; Plaintiff Dep. 86:4-10.

48.     Mark Scott, Ashley's Chief Operating Officer, received reports from Neel Jhaveri, Jay Travaglini, an Ashley District Manager, several Paramus store sales associates, and from Ms. Ricciardi regarding Plaintiff's actions at the Paramus store on October 4, 2014 and the Secaucus store on October 5, 2014. Scott Dep. at 33:4-36:7; 38:10-39:14; 46:7-48:7; Exhibit 1.

49.     As a result, on Sunday, October 7, 2012, Mr. Scott sent Ms. Martin an email reciting Plaintiff's wrongful actions during her less than two (2) weeks of employment, and directing Ms. Martin to discharge Plaintiff. Id. at 33:4-36:7; 38:10-39:14; 46:7-48:7; Exhibit 1.

50.     Mr. Scott made the decision to discharge Plaintiff. Id. at 52:16-18; Martin Dep. at 221:22-223:1.

51.     Ms. Martin had no authority, on her own, to discharge Plaintiff. Chrinian Dep. at 45:1-8.

52.     Per Mr. Scott's direction, on Monday, October 8, 2012, Ms. Martin discharged Plaintiff. Martin Dep. at 226:12-233:25.

53.     Ms. Ricciardi also was discharged for insubordination as a result of her role in the argument with Plaintiff. Scott Dep. 73:3-74:25; Martin Dep. at 209:1-214:3.

54.     Rather than leaving the premises professionally, Plaintiff engaged in a final act of misconduct on her way out of the building, telling Ms. Dominguez and Ms. Thorpe that she (Plaintiff) intended to go to the police and to file a lawsuit.  Martin Dep. at 234:1-20.

55.     At the time of Plaintiff's discharge, no member of Ashley management was aware that Plaintiff was homosexual or married to a woman.  Scott Dep. at 56:1-15; Thorpe Dep. at 23:22-24; Dominguez Dep. 26:20-27:14; 30:11-15; Chrinian Dep. at 12:4-20; Plaintiff Dep. at 87:22-88:13; Martin Dep. at 193:8-25; 197:13-198:15.

56.     During Plaintiff's employment by Ashley, no one made any derogatory statement to her regarding her sexual orientation.  Plaintiff Dep. at 92:3-17.

57.     In fact, Ashley has employed many homosexual individuals, other than Plaintiff. Chrinian Dep. at 102:24-103:14.

58.     Mr. Scott, who made the decision to discharge Plaintiff, also was unaware of any complaints that Plaintiff may have made during her brief employment at Ashley.   To the contrary, Mr. Scott's interaction with Plaintiff during her brief employment at Ashley solely consisted of conversing with her in passing on a single occasion.  Scott Dep. at 45:12-18, 56:16-19.

59.     Crucially, Plaintiff never complained to any supervisor or to management regarding any alleged wrongful action by Ms. Martin.  Plaintiff Dep. at 95:12-14; 109:13-16; Chrinian Dep. at 114:8-116:16.

**ARCHER & GREINER, P.C.**
Attorneys for Defendants

Steven B. Harz, Esquire
Daniel C. Ritson, Esquire
Court Plaza South, West Wing
21 Main Street, Suite 353
Hackensack, NJ 07601
(201-342-6000)

Dated:  August 4, 2014

11357760v1