**ARCHER & GREINER**
A Professional Corporation
Court Plaza South, West Wing
21 Main Street, Suite 353
Hackensack, New Jersey 07601-7095
(201) 342-6000
Attorneys for Defendants Factory Direct of Secaucus, LLC
d/b/a Ashley Furniture HomeStore, Eugene Chrinian and Kathy Martin

BY: STEVEN B. HARZ, ESQUIRE (006921977)
    DANIEL C. RITSON, ESQUIRE (027802004)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ISABEL PEREZ,<br><br>    Plaintiff,<br>v.<br><br>FACTORY DIRECT OF SECAUCUS, LLC d/b/a ASHLEY FURNITURE HOMESTORE, EUGENE CHRINIAN, in his official and individual capacities, and KATHY MARTIN, in her official and individual capacities,<br><br>    Defendants. | CIVIL ACTION<br><br>NO.: 2:13-cv-00327 (SDW-MCA)<br><br><br><br><br><br>**Oral argument requested.** |

---

DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

On the brief:
    Steven B. Harz, Esq.
    Daniel C. Ritson, Esq.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii
PRELIMINARY STATEMENT ........................................................................................... 1
STATEMENT OF FACTS .................................................................................................... 3
ARGUMENT ......................................................................................................................... 3
    I.    SUMMARY JUDGMENT IS APPROPRIATE BECAUSE NO REASONABLE JURY COULD FIND IN FAVOR OF PLAINTIFF .................. 3
    II.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ......... 4
        A.    Plaintiff's claim alleging retaliatory discharge is meritless ....................... 4
        B.    Plaintiff's claim alleging discriminatory discharge is meritless .............. 10
CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

Alevras v. Tacopina,
226 Fed. Appx. 222 (3rd Cir. 2007)..................................................................................3

Aman v. Cort Furniture Rental Corp.,
85 F.3d 1074 (3rd Cir. 1996) ............................................................................................4

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986).........................................................................................................4

McDonnell Douglas Corp. v. Green,
411 U.S. 792 (1973).......................................................................................................11

Motto v. Wal-Mart Stores East, LP,
2014 U.S. App. LEXIS 6343 (3rd Cir., April 7, 2014) at *9...........................................5

Schoonejongen v. Curtiss-Wright Corp.,
143 F.3d 120 (3rd Cir. 1998) ...........................................................................................3

Scott v. Harris,
550 U.S. 372 (2007).........................................................................................................4

Univ. of Tex. Sw. Med. Ctr. v. Nassar,
133 S. Ct. 2517 (2013).....................................................................................................5

**State Cases**

Victor v. State,
203 N.J. 383 (2010) .......................................................................................................11

**Federal Statutes**

§ 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, Title VII............................................4, 5

Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq. ........................................................................4

**State Statutes**

N.J.S.A. 10:5-1, et seq. .....................................................................................................................4

**Rules**

Federal Rule of Civil Procedure 56 ..................................................................................................3

Local Civ. Rule 56.1(a)............................................................................................................2, 3

## PRELIMINARY STATEMENT

Plaintiff Isabel Perez ("Plaintiff") was employed by Defendant Factory Direct of Secaucus, LLC d/b/a Ashley Furniture HomeStore ("Ashley" or the "Company") from September 25, 2012 through October 8, 2012. During Plaintiff's mere fourteen (14) days of employment with Ashley, she offended and insulted nearly every colleague with whom she came into contact. At deposition, Defendant Eugene Chrinian, Ashley's Chief Executive Officer, best summarized Plaintiff's employment: "[T]here was a common denominator. Wherever [Plaintiff] was[,] there was a problem." Certification of Counsel in Support of Defendants' Motion for Summary Judgment ("Counsel Cert.") at ¶5, Exhibit "C", transcript of the deposition of Eugene Chrinian ("Chrinian Dep.") at 36:11-37:12. Plaintiff's shocking behavior during her abbreviated employment at Ashley included, among other thing:

- Belittling subordinate employees for their attempts to learn during a seminar at ADP, Ashley's payroll provider;

- Falsely "disclosing" to her subordinate employees that Ashley's management wanted to terminate their employment;

- Making vicious personal attacks against Defendant Kathy Martin, Ashley's now former Director of People Services and Development, in conversations with a subordinate employee behind Ms. Martin's back;

- Rudely and carelessly disrupting meetings at Ashley's successful Paramus store by threatening employees and, in front of those employees, questioning the ability of the store manager to manage the store; and

- Engaging in an out-of-control, screaming argument with a subordinate employee.

1

Plaintiff's appalling actions during her brief employment at Ashley were testified to by, among others, four (4) non-party witnesses, to wit, Ashley Paramus Store manager Neel Jhaveri and former employees Amber Dominguez, Lisa Thorpe, and Theresa Ricciardi. It should be noted that the latter three individuals are more than merely unbiased - each of them is, essentially, a disgruntled former employee of Ashley who had every reason to testify against the Company. Yet, each of them testified in *support* of the defenses of Ashley, Mr. Chrinian, and Ms. Martin (collectively, "Defendants"), describing Plaintiff at various turns as someone who made them feel "uncomfortable," "upset emotionally," and "very anxious," and who was "very bossy," "sneaky," and "very argumentative." Counsel Cert. at ¶6, Exhibit "D", transcript of the deposition of Theresa Ricciardi ("Ricciardi Dep. ") at 35:1-36:11; Counsel Cert. at ¶7, Exhibit "E", transcript of the deposition of Lisa Thorpe ("Thorpe Dep.") at 30:17-22; Counsel Cert. at ¶8, Exhibit "F", transcript of the deposition of Amber Dominguez ("Dominguez Dep.") at 39:17-25. Non-party Lisa Thorpe, a now former Ashley Recruiter, testified bluntly: "I thought [Plaintiff] was crazy." Thorpe Dep. at 36:16.[1]

After receiving multiple reports of Plaintiff's outrageous conduct, Mark Scott, Ashley's Chief Operating Officer, ordered Ms. Martin to discharge Plaintiff. Mr. Scott's interaction with Plaintiff during her brief employment was limited to conversing with her in passing on a single occasion. Counsel Cert at ¶9, Exhibit "G", transcript of the deposition of Mark Scott ("Scott Dep.") at 45:12-18. Mr. Scott had no knowledge of Plaintiff's sexual orientation, nor any knowledge of any protected complaints that Plaintiff allegedly made to Ms. Martin. Id. at 56:1-19. In fact, Plaintiff flatly admitted at deposition that she did not notify *any* member of Ashley's

---

[1] With respect to the non-party witnesses essentially being disgruntled former employees, please refer to Ms. Dominguez' deposition testimony at 75:1-76:9, and to Ms. Thorpe's deposition testimony at 47:24-48:9. Ms. Ricciardi, for her part, was discharged by Ashley. Please refer to the Statement of Material Facts Not in Dispute Pursuant to Local Civ. Rule 56.1(a) at ¶49.

2

management of her alleged complaints to Ms. Martin. Counsel Cert. at ¶10, Exhibit "H", transcript of the deposition of Isabel Perez ("Plaintiff Dep.") at 95:12-14; 109:13-16. Yet, absurdly, Plaintiff's Amended Complaint (the "Complaint") contains the following claims against Ashley, Mr. Chrinian, and Ms. Martin (collectively, "Defendants"):

- Retaliatory discharge, based on alleged complaints made by Plaintiff to Ms. Martin with respect to discriminatory comments of Ms. Martin concerning other employees (i.e. *not* Plaintiff); and

- Discriminatory discharge, based on Plaintiff being homosexual.

For the reasons provided above, and for the further reasons detailed below, Plaintiff's claims are utterly without merit and should be dismissed with prejudice.

## STATEMENT OF FACTS

With regard to a full statement of the facts of this matter, Defendants refer to, incorporate herein, and rely upon the Statement of Material Facts Not in Dispute Pursuant to Local Civ. Rule 56.1(a) (the "Statement of Facts") submitted herewith.

## ARGUMENT

### I. SUMMARY JUDGMENT IS APPROPRIATE BECAUSE NO REASONABLE JURY COULD FIND IN FAVOR OF PLAINTIFF

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." If the Court, after drawing all inferences in favor of the non-moving party and making all credibility determinations in that party's favor, determines that no reasonable jury could find for that party, then summary judgment is appropriate. Alevras v. Tacopina, 226 Fed. Appx. 222, 227 (3rd Cir. 2007), citing Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 130 (3rd Cir. 1998). The inquiry is

3

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

In the present matter, Plaintiff's version of the events of her markedly short period of employment at Ashley is blatantly contradicted by the testimony not only of Defendants, but that of four (4) non-party witnesses *and the admissions of Plaintiff herself.* In light of the one-sided record in Defendants' favor, no reasonable jury possibly could find for Plaintiff. Summary judgment in favor of Defendants therefore is appropriate.

## II. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

### A. Plaintiff's claim alleging retaliatory discharge is meritless.

Plaintiff's Complaint contains four (4) causes of action. (A copy of Plaintiff's Complaint is provided with the Counsel Cert., at ¶3, Exhibit "A.") The first, second, and fourth causes of action all allege that Plaintiff was discharged in retaliation for complaints she made to Ms. Martin about Ms. Martin's alleged use in the workplace of inappropriate terms regarding race, ethnicity, sex, religion, and sexual orientation. Plaintiff brings those causes of action under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq. ("Title VII"), and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. ("LAD") respectively. Plaintiff's claims of retaliatory discharge have no merit.

An allegation of unlawful retaliation, whether under Title VII, Section 1981, or LAD, is analyzed via the same standard. See Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1088-

4

1089 (3rd Cir. 1996); Motto v. Wal-Mart Stores East, LP, 2014 U.S. App. LEXIS 6343 (3rd Cir., April 7, 2014) at *9 n.3. In order to demonstrate a prima facie case, a plaintiff must show that: "(1) [she] engaged in protected activity; (2) the employer took an adverse employment action against [her]; and (3) there was a causal connection between the protected activity and the adverse employment action." If the plaintiff establishes her prima facie case, the burden shifts to the defendant to "articulate a legitimate, non-discriminatory, reason for the adverse employment action." If the defendant does so, the burden shifts back to the plaintiff to "present evidence to show that the employer's stated reason was pretextual." Id. at *8 (internal citations omitted). Crucially with regard to the above, Plaintiff must prove that her protected activity was the "but-for cause" of her discharge. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013).[2] Plaintiff cannot possibly do so.

During Plaintiff's mere fourteen (14) days of employment at Ashley, her wrongful behavior provided the company with numerous reasons that, even each taken alone, justified her discharge. To wit:

- On September 19, 2012, prior to beginning employment with Ashley, Plaintiff voluntarily attended an educational session at ADP with Ms. Martin, and non-party witnesses Ms. Thorpe and Ms. Dominguez (a now former Ashley Human Resources Assistant/Coordinator). Statement of Facts at ¶¶11, 12. Prior to Ms. Martin's arrival at

---

[2] In Motto, supra, the United States Court of Appeals for the Third Circuit declined to determine whether the Supreme Court of the United States' ruling in Nassar, under Title VII, extends to Section 1981. The Third Circuit was able to sidestep the question because, in Motto, the plaintiff could not demonstrate causation under any standard, "but-for" or otherwise. The Supreme Court of New Jersey has not yet addressed the issue under LAD. Because Section 1981 and LAD always have been construed per the Supreme Court of the United States' guidance with respect to Title VII, unless and until the Third Circuit or the Supreme Court of New Jersey holds otherwise, the "but-for" causation standard applicable to Title VII also should be applied to Section 1981 and LAD. However, it is important to note that, as in Motto, Plaintiff in the present matter cannot demonstrate causation by *any* standard.

5

the ADP session, Plaintiff behaved in an argumentative and disruptive fashion, repeatedly dismissing the questions that Ms. Dominguez and Ms. Thorpe asked the ADP instructor. Even after Ms. Dominguez and Ms. Thorpe advised Plaintiff that they previously had discussed with Ms. Martin the information that they hoped to gain from the ADP session, Plaintiff responded: "[Ms. Martin] is not overseeing ADP; I am." Id. at ¶¶13-16. Moreover, even after Ms. Martin arrived at the meeting, Plaintiff inappropriately continued to express exasperation with Ms. Thorpe's questions, making a "huffing" sound each time that Ms. Thorpe asked a question. Id. at ¶19. Furthermore, Plaintiff surreptitiously recorded the ADP session without the knowledge or consent of Ms. Dominguez or Ms. Thorpe, greatly upsetting them. Id. at ¶17.

- Shortly after beginning employment at Ashley, Plaintiff held closed door meetings with Ms. Dominguez and Ms. Thorpe, in which Plaintiff outlandishly stated, among other things, that

    - Ms. Martin was no longer in charge of Ashley's Human Resources Department;
    - Mr. Chrinian was seeking to discharge Ms. Dominguez and Ms. Thorpe and kept a file on them;
    - Ms. Martin also wanted to discharge Ms. Dominguez and Ms. Thorpe;
    - Mr. Chrinian did not trust Ms. Martin;
    - Plaintiff was going to replace Ms. Martin.

Id. at ¶24. Plaintiff's statements were patently false. (In fact, neither Ms. Dominguez nor Ms. Thorpe ever was discharged by Ashley but, rather, resigned. Moreover, it was *Plaintiff* who wanted to discharge Ms. Dominguez and Ms. Thorpe. Id. at ¶¶25-26.) Stunningly, at deposition Plaintiff flatly admitted telling Ms. Dominguez that Mr.

6

Chrinian kept a file on Ms. Dominguez and wanted to fire her. Plaintiff Dep. at 77:3-19. Even if Plaintiff's statements were true (which they were not), it is incredible that Plaintiff felt it appropriate to "disclose" to a subordinate employee that upper management wanted to discharge the employee.

- Plaintiff viciously attacked Ms. Martin behind her back, telling Ms. Dominguez, a subordinate employee, that Plaintiff had "investigated" Ms. Martin and determined that
  - Ms. Martin's ex-husband was a drug addict, as was Ms. Martin;
  - Ms. Martin once had been homeless;
  - Ms. Martin's children were fathered by different men; and
  - Ms. Martin was covering up other negative past history.

Statement of Facts at ¶28.

- On Thursday, October 4, 2012, Plaintiff and the third non-party witness, Theresa Ricciardi, a now former Ashley Recruiter, visited Ashley's Paramus store. Id. at ¶30. During the morning store "huddle" (a meeting at which the store's managers and salespersons discuss issues that may arise during the workday), Plaintiff repeatedly interrupted Neel Jhaveri, the Paramus store's Sales Manager, while he was speaking. Id. at ¶¶31-32. Despite the fact that Plaintiff and Mr. Jhaveri previously had not met, Plaintiff, in front of the other employees, embarrassed Mr. Jhaveri by questioning his ability to manage the Paramus store and falsely telling the employees that Ashley "has done a lot of things wrong for a number of years" and that she was "going to have to fix it." Id. at ¶¶33-34. Plaintiff threatened the store employees, "If you're late one time, you'll have a verbal conversation; second time a write up; and third time you won't work here." Plaintiff also addressed employee absenteeism in a similarly threatening manner.

7

However, *the Paramus store did not have any problem regarding employee tardiness or absenteeism.* Id. at ¶¶36-37.

- During the Paramus store's afternoon "huddle", Plaintiff repeatedly engaged in their own conversations with Ms. Ricciardi while Mr. Jhaveri was attempting to address the employees. Plaintiff threatened the employees that she was going to "clean up the mess" at the store, and said to Mr. Jhaveri that, "Kathy Martin doesn't know what she's doing," and that she (Plaintiff) would have to "coach" Ms. Martin. Id. at ¶¶38-42.

- On October 5, 2012, a meeting was held at Ashley's Secaucus store with respect to recruiting, at which meeting Plaintiff, Ms. Martin, Ms. Ricciardi, Ms. Dominguez, and Ms. Thorpe all were present. During the meeting, Plaintiff and Ms. Ricciardi had an out-of-control argument, with Plaintiff at one point screaming at Ms. Ricciardi, over and over, "You have to listen to me! I am the HR Director! I am the HR Director!" Id. at ¶¶43-45.

As the litany of facts above indicates, Ashley had every reason to discharge Ms. Perez. To again quote Mr. Chrinian: "[T]here was a common denominator. Wherever [Plaintiff] was[,] there was a problem." Chrinian Dep. at 36:11-37:12. As such, it is impossible for Plaintiff to prove by a preponderance of evidence that she would not have been discharged "but for" her alleged complaints to Ms. Martin – to the contrary, any employer immediately would have discharged Plaintiff upon being advised of any of the above incidents.

In the present case, that is precisely what occurred: Mr. Scott, after receiving reports of Plaintiff's egregious workplace conduct directly from Mr. Jhaveri, from Jay Travaglini, an Ashley District Manager, from several Paramus store sales associates, and from Ms. Ricciardi,

8

directed Ms. Martin to discharge Plaintiff. Id. at ¶¶48-49. In that regard, a number of undisputed facts and admissions of Plaintiff are crucial:

- The decision to discharge Plaintiff was made by Mr. Scott:

    Q. Who decided to terminate [Plaintiff]? That is, who was the ultimate decision maker?

    A. Ultimately, it was me.

    Scott Dep. at 52:16-18.

- Ms. Martin had no authority, on her own, to discharge Plaintiff. Id. at ¶51.

- Mr. Scott, who made the decision to discharge Plaintiff, was unaware of any complaints that Plaintiff may have made during her brief employment at Ashley. Id. at ¶58.

- Plaintiff testified that her complaints about Ms. Martin solely were made to… Ms. Martin. Plaintiff *never* complained to any supervisor or to management over Ms. Martin (neither Mr. Scott nor anyone else) regarding any alleged actions by Ms. Martin:

    Q. Did you complain to anyone else who's a supervisor about alleged harassment?

    A. No, Ms. Martin, that's it.

    Plaintiff Dep. at 95:12-14; and again:

    Q. The standing question, Ms. Perez, is: Did you ever complain to a supervisor over Ms. Martin at Ashley?

    A. No.

    Id. at 109:13-16.

Summarizing the above, Plaintiff engaged in repeated outrageous conduct. Whether Plaintiff claims otherwise is irrelevant, because it is undisputed that word of such conduct reached Mr. Scott and it further is undisputed that Mr. Scott made the decision to discharge

9

Plaintiff. There is no evidence in the record to suggest that Mr. Scott had any knowledge of Plaintiff's alleged complaints to Ms. Martin and, moreover, Plaintiff flatly admitted that she did not complain to anyone except to Ms. Martin… about Ms. Martin. Accordingly, Plaintiff has no evidence even tending to suggest that her alleged complaints to Ms. Martin were the cause of Plaintiff's discharge, and certainly not the "but for" cause.

Without a doubt, Plaintiff will respond to the above by providing the Court with a parade of horribles with respect to the alleged slurs uttered by Ms. Martin (such as the word "nigga"), in an attempt to raise an issue of material fact solely through shock value. In that regard, it is of the utmost importance to note that what Ms. Martin may have said, how often she may have said it, and to whom she may have said it, all are entirely irrelevant issues. To the contrary, the only relevant issues for purposes of this Motion for Summary Judgment are whether Plaintiff complained to anyone other than Ms. Martin herself, and, if not, whether Ashley management somehow otherwise learned of Plaintiff's complaints. As previously stated, Plaintiff bluntly admitted at deposition that she *never* complained to anyone other than Ms. Martin, and there is not a shred of evidence in the record to indicate that Mr. Scott (nor anyone else) was aware of Plaintiff's complaints at the time he determined that Plaintiff should be discharged. As such, Plaintiff's frivolous claims of retaliatory discharge therefore all should be dismissed.

### B. Plaintiff's claim alleging discriminatory discharge is meritless.

Because Plaintiff's causes of action alleging retaliatory discharge should be dismissed, the only remaining cause of action contained in Plaintiff's Complaint is the third cause of action. That cause of action alleges discriminatory discharge under the LAD. Specifically, Plaintiff alleges that she was discharged because she is homosexual. Like Plaintiff's claims of retaliatory discharge, her claim of discriminatory discharge has no merit.

10

Where a plaintiff alleges a discriminatory discharge, that plaintiff must demonstrate the following elements of a prima facie case: "(1) that plaintiff is in a protected class; (2) that plaintiff was otherwise qualified and performing the essential functions of the job; (3) that plaintiff was terminated; and (4) that the employer thereafter sought similarly qualified individuals for that job." Victor v. State, 203 N.J. 383, 409 (2010). If the plaintiff demonstrates all of the preceding elements, the burden shifts to the defendant to demonstrate a "legitimate business reason for the employment decision." If the defendant does so, the burden shifts back to the plaintiff to demonstrate that "the reason proffered is a mere pretext for discrimination." Id. at 408 n.9, citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

As even the most cursory review of the Statement of Facts reveals, Plaintiff cannot demonstrate a prima facie case. Specifically, Plaintiff cannot satisfy the second element of the prima facie case, because she was not performing the essential functions of her job as Human Resources Director. In that regard, Defendants again respectfully refer the Court to the litany of Plaintiff's incidents of misconduct referenced in section II(A) above. Plaintiff not only failed to perform her job as Human Resources Director, but she made a mockery of the position. Furthermore, even if Plaintiff could demonstrate a prima facie case (which she cannot), as detailed above Defendants have provided numerous legitimate, non-discriminatory reasons for Plaintiff's discharge.

There is no evidence in the record even tending to indicate that Defendants' reasons for Plaintiff's discharge were a pretext for discrimination based on Plaintiff's sexual orientation. Plaintiff testified:

> Q. Did anyone ever make a derogatory comment to you, personally, about your sexual orientation?

11

...

    A.    No, to me directly, no.

Plaintiff Dep. at 92:3-17.

In addition, there is no evidence in the record to indicate that any member of Ashley management knew about Plaintiff's homosexuality (Plaintiff told only Ms. Dominguez and Ms. Thorpe, neither of whom were management and both of whom were subordinate to Plaintiff). Please see Scott Dep. at 56:1-15; Thorpe Dep. at 23:22-24; Dominguez Dep. 26:20-27:14; Chrinian Dep. at 12:4-13; and, crucially, Plaintiff's own testimony:

    Q.    While working at Ashley, did you ever discuss your sexual orientation with anyone?

    A.    Yes.

    Q.    Did you discuss it with Amber Dominguez?

    A.    Yes.

    Q.    Did you discuss it with Lisa Thorpe?

    A.    Yes.

    Q.    Did you ever talk to Ms. Martin about it?

    A.    No.

    Q.    Did you ever discuss it with Mr. Chrinian?

    A.    No.

    Q.    Did you ever discuss it with Mr. Scott?

    A.    No.

    Q.    Do you have any evidence to show that either Ms. Thorpe or Ms. Dominguez ever told Ms. Martin about your sexual orientation?

>   A.   No.
>
>   Q.   Do you have any evidence to show that either Ms. Thorpe or Ms. Dominguez ever told Mr. Chrinian about your sexual orientation?
>
>   A.   No.

Plaintiff Dep. at 87:22-88:13

In an attempt to escape her own admissions, Plaintiff undoubtedly will cite to her self-serving and rather fantastic testimony, elsewhere in her deposition, that Ms. Martin referred to Plaintiff as a "lesbo" while praying for Plaintiff with her hands on Plaintiff's head. Id. at 64:9-22. That testimony is, of course, directly contracted by Plaintiff's own admission above that no derogatory comment ever was made to her about her sexual orientation. In addition, even if Ms. Martin had made such a statement (which she did not), the record is clear that Ms. Martin had no authority to discharge Plaintiff (but rather was directed to do so by Mr. Scott), *and that Ms. Martin actively encouraged Plaintiff's continued employment with Ashley just one (1) business day before Plaintiff was discharged*:

>   Q.   You stormed out of the [October 5, 2014] meeting saying that you resigned, isn't that correct?
>
>   A.   That I was contemplating resignation, yes.
>
>   Q.   Ms. Martin actually asked that you come back into the room[,] asking that you do not resign.
>
>   A.   Yes.

Id. 86:4-10.

As Plaintiff's own testimony above indicates, the idea that Ms. Martin held some discriminatory animus with respect to Plaintiff is preposterous. Further, Mr. Scott, not Ms.

Martin, made the decision to discharge Plaintiff. Mr. Scott had no knowledge of Plaintiff's sexual orientation. Accordingly, Plaintiff's specious claim of discriminatory discharge should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendants' respectfully submit that their Motion for Summary Judgment should be granted and that Plaintiff's Complaint should be dismissed with prejudice in its entirety.

Respectfully submitted,

**ARCHER & GREINER, P.C.**
Attorneys for Defendants

*/s/ Steven B. Harz/*

Steven B. Harz, Esquire
Daniel C. Ritson, Esquire
Court Plaza South, West Wing
21 Main Street, Suite 353
Hackensack, NJ 07601
(201-342-6000)

Dated: August 4, 2014

11357752v1